UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANDRE CORNELL-LEE GRAYSON,

    Plaintiff,

v.

ANGIR SISCO, *et al.*,

    Defendants.
_____/

Case No. 1:23-cv-644

Hon. JANE M. BECKERING

**REPORT AND RECOMMENDATION**

    This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Deandre Cornell-Lee Grayson ("Grayson"), a prisoner formerly in the custody of the Michigan Department of Corrections (MDOC).[1]

    Grayson sued 14 defendants for claims which arose from his incarceration at the Lakeland Correctional Facility (LCF) and the Saginaw Correctional Facility (SRF). Ten defendants are employees at LCF (collectively referred to as the "MDOC defendants"): RN Lori Blue; Warden Bryant Morrison; Assistant Deputy Warden (ADW) Troy Chrisman; Grievance Coordinator Jennifer Rohrig; DW Robert Ault; Prison Counselor (PC) Patrick Daniels; Resident Unit Manager (RUM) Timothy Shaw; then-Inspector Janet Traore; RUM Scott Cline; and PC Markiyroe Garrett. *See* Compl. (ECF No. 3).  The remaining four defendants are non-MDOC

---

[1] Grayson is currently incarcerated at FCI Allenwood Medium in Pennsylvania. By way of background, Grayson filed this lawsuit in the Ingham County Circuit Court, it was removed to the United States District Court for the Eastern District of Michigan, and then transferred from the Eastern District to this Court.  *See* Notice of Removal (ECF No. 1); Opinion and Order (ECF No. 14).  Due to the transfer, this case involves two sets of "PageID." numbers.  PageID.1-118 apply to documents from ECF No. 1 through 15 filed in the Eastern District, while a second set of "PageID." numbers commences with ECF No. 15-1, PageID.1.

1

health care providers: Nurse or NP Angir Sisco (SRF); Medical Practitioner Lura Brown (SRF); Dr. Margaret Ouellette (named as "Quellete") (LCF); and Medical Provider E. Coe Hill (LCF).[2]

This matter is now before the Court on the MDOC defendants' motion for summary judgment on the basis of exhaustion (ECF No. 25). In addition, the Court will address a combined motion for summary judgment and motion to dismiss (ECF No. 28) in which defendants Sisco, Brown, Ouellette and Hill seek summary judgment on the basis of exhaustion and defendants Ouellette and Hill seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

### I.  Background

Grayson alleged that he was exposed to "black mold" at LCF from July 21, 2021 (when he transferred to LCF) until he transferred to SRF on or about February 18, 2022.[3] Compl. (ECF No. 3, PageID.12-18). He claims that the MDOC defendants and health care providers Ouellette and Hill violated his constitutional rights at LCF and that medical providers Sisco and Brown violated his constitutional rights at SRF. Compl. at PageID.12-23. Grayson set forth the following "legal claims" against defendants.

Defendants RN Blue, Medical Provider Hill, and Dr. Ouellete were deliberately indifferent to his urgent need for medical attention and violated his rights under the Fifth, Eighth and Fourteenth Amendments. Compl. at PageID.24.

While Grayson refers to defendant NP Sisco and Medical Provider Brown as being deliberately indifferent to his serious medical needs, *e.g.*, "by forcing him to remain taking the

---

[2] The Court notes that Grayson's complaint listed unknown parties or "Doe" defendants. These unidentified Doe defendants are not parties to this lawsuit. *See Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998) ("Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.") (internal quotation and citation omitted).

[3] Grayson did not allege a timeline for his transfer. A Step II grievance response in Grievance SRF-2022-07-607-12D1 states that "Review of the prisoner health record reveals that grievant arrived at SRF on 2/18/2022" (ECF No. 3, PageID.54).

2

medications Claritin and Vistaril after he had repeatedly told them that those medications are not affective [sic], but cause his rashes and hives to persist and worsen" (*id*. at PageID.23), he does not set forth a separate "legal claim" against them.  *See* Compl. at PageID.24.  Nevertheless, the Court construes Grayson's *pro se* complaint as alleging Eighth Amendment deliberate indifference claims against defendants Sisco and Brown.

Next, defendants Grievance Coordinator Rohrig, Warden Morrison, ADW Chrisman, DW Ault, PC Daniels, RUM Shaw, RUM Cline, PC Garrett, and then-Inspector Traore violated Grayson's rights under the Fifth and Fourteenth Amendments when "they ignored their duties to adhere to P.D. 03.02.130 and file his grievances."  *Id*.

Next, defendants Morrison, Chrisman, Ault, Daniels, Shaw, Cline, and Garrett violated Grayson's rights under the Fifth, Eighth, and Fourteenth Amendments when "they ignored their duties to adhere to Policy Directive[s] for Humane Treatment and Living Conditions . . . by failing to provide Plaintiff with safe and healthy living conditions and health services."  *Id*.

Next, defendants Morrison, Chrisman, Ault, and Shaw violated Grayson's Fifth and Fourteenth Amendment rights when "they conspired to/and fabricated transfer records, smuggling misconduct ticket, security level records, unknown records, and the existence of records, and corruptly transferred Plaintiff from a level two, to a level four."  *Id*.

Next, defendants Morrison, Chrisman, Ault, and Shaw violated Grayson's First Amendment rights when they "retaliated against Plaintiff by fabricating records to make it appear as if he had received a smuggling ticket, then had him transferred to a security level four from a security level two."  *Id*. at PageID.25.

Finally, defendants Morrison, Chrisman, Ault, Daniels, Shaw, Cline, and Garrett violated Grayson's rights under the Fifth and Fourteenth Amendments when "these Defendants

3

violated his substantive due process rights as their deliberate indifference was the cause of Plaintiff's injuries." *Id*.

Grayson seeks compensatory and punitive damages. *Id*. at PageID.25-26.

## II. Summary Judgment

### A. Legal standard

Defendants have moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

4

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, Grayson did not file a response in opposition to the motions for summary judgment. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

### B.    Lack of Exhaustion

#### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

5

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

6

### C.     MDOC Defendants

The MDOC defendants identified six grievances which Grayson filed at Step I after August 2020 which he pursued through Step III.  As discussed, *infra*, these grievances were either not properly exhausted or not relevant to the claims raised in this lawsuit.[4]

#### 1.     LCF-22-07-0489-28e ("489")

Grievance 489 complained that an unnamed individual who screened Grayson for transfer from LCF wrongly screened him as a level V prisoner in retaliation for his complaints about black mold.  Grievance 489 (ECF No. 26-3, PageID.64).  In response to the grievance, an investigation concluded that Grayson "had a pending smuggling ticket and a referral to MSP" and his grievance was denied.  Grievance 489 (ECF No. 3, PageID.49).  Grayson's Step II appeal was rejected as untimely.  Grievance 489 (ECF No. 26-3, PageID.63).  The rejection was upheld at Step III.  *Id*. at PageID.62.  Based on this record, Grayson did not properly exhaust Grievance 489.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

#### 2.     LCF-22-07-0490-28e ("490")

Grievance 490 referred to "the Warden and his staff at LCF" for exposing Grayson to black mold, causing him hives, rashes, and itching daily.  Grievance 490 (ECF No. 26-3, PageID.61).  The grievance was rejected pursuant to PD 03.02.130 because "The alleged violation is of mutual concern amongst the prison population and should be addressed as outlined in PD 04.01.150".  *Id*.  The Step II appeal was rejected as untimely.  *Id*. at PageID.60.  The rejection was upheld at Step III.  *Id*. at PageID.59.  Based on this record, Grayson did not properly exhaust Grievance 490.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

---

[4] Copies of Grayson's grievances appear in his complaint (ECF No. 3) and MDOC records (ECF No. 26-3).  The Court cites both sources.

3.  **SRF-22-07-0606-27b ("606")**

Grayson filed Grievance 606 after his transfer to SRF. In this grievance, he complained that SRF transfer staff acted improperly in allowing his transfer. Grievance 606 (ECF No. 26-3, PageID.75). The grievance refers to RUM Nsimus and unidentified employees at SRF (ADW of Housing, ADW of Security, and Transfer Coordinator). *Id*. The grievance was rejected at Step I:

> PD 05.01.130 states in part, "While there is **no right to placement at a particular security level or facility**, prisoners shall be classified according to management and confinement requirements necessary for protection of the public, prevention of escape, maintenance of control and order, and the safety of staff and prisoners. This grievance is rejected at Step I.

*Id*. The rejection was upheld at Steps II and III. Grievance 606 (ECF No. 26-3, PageID.73-74). Based on this record, Grayson did not properly exhaust Grievance 606. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Furthermore, the claims identified in the grievance are not related to this lawsuit.

4.  **SRF-22-07-0607-28e ("607")**

In Grievance 607, Grayson complains that NP Angir-Sisco, a medical provider at SRF, did not properly treat him after his exposure to black mold at LCF. Grievance 607 (ECF No. 26-3, PageID.57). The grievance was denied after the following investigation:

> Investigation reveals that mold was found in the attics of a couple units at LCF due to a roof leak. There was no impact on the ventilation system and it was not black mold. The reason the prisoners were moved out was for the company to do the remediation quickly.
>
> Upon arrival to SRF and with complaints of hives, and itching you were seen by NP Sisco. SRF does not have a PA. NP Sisco is qualified medical professional who evaluated and treated the grievant as deemed appropriate. Allery [sic] testing confirmed an allergy to mold and fungus which is common and likely unrelated to the the [sic] prisoners housing at Lakeland. Treatment is ongoing and the grievant is advised to contact healthcare with symptoms that persist or worsen.

*Id*. at PageID.58.  The grievance was denied at Step II.  *Id*. at PageID.55-56.  However, the grievance was rejected at Step III as untimely.  *Id*. at PageID.54.  Based on this record, Grayson did not properly exhaust Grievance 607.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

### 5. SRF-22-07-0672-28e ("672")

In Grievance 672, Grayson complained that he was incorrectly charged a $5.00 co-pay at SRF on July 7, 2022.  Grievance 672 (ECF No. 26-3, PageID.67).  This grievance is not related to any of the claims in this lawsuit.

### 6. SRF-22-07-0674-28b ("674")

In Grievance 674 (dated July 15, 2022), Grayson stated that he kited for his medical records for allergy testing in "May/June 2022" with the relief sought of, "I receive my records."  Grievance 674 (ECF No. 26-3, PageID.71).  This grievance is not related to any of the claims in this lawsuit.

Based on this record, Grayson did not properly exhaust a grievance to support his constitutional claims against any of the MDOC defendants at LCF.  *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, MDOC defendants Blue, Morrison, Chrisman, Rohrig, Ault, Daniels, Shaw, Traore, Cline, and Garrett's motion for summary judgment (ECF No. 25) should be granted.

### D. Health Care Providers Sisco, Brown, Ouellete and Hill

In their motion for summary judgment, defendants Sisco, Brown, Ouellete and Hill also reviewed Grayson's grievance history and identified the same six grievances (489, 490, 606, 607, 672, and 674).  As an initial matter, defendants Brown, Ouellette and Hill point out that Grayson did not exhaust any claims against them because he did not file any grievances against

them. Next, defendant Sisco points out that the only grievance directed against her (607) was not properly exhausted. *See* § II.C.4, *supra*. Accordingly, the health care provider defendants Sisco, Brown, Ouellete, and Hill's motion for summary judgment for lack of exhaustion (ECF No. 28) should be granted,

### III.    Motion to dismiss

Finally, the non-MDOC defendants' combined motion included a motion to dismiss Ouellette and Hill pursuant to Fed. R. Civ. P. 12(b)(6). *See* Motion (ECF No. 28, PageID.94-96). As an initial matter, the case management order (CMO) (ECF No. 20) advised the parties that the Court has determined that "the court has determined that the complaint contains 'enough facts to state a claim to relief that is plausible on its face'" and discouraged parties from filing motions to dismiss on that basis:

> Rule 12(b)(6) Motions. The Court has conducted an initial review of the complaint pursuant to 28 U.S.C. §1915(e), §1915A and 42 U.S.C. § 1997e(c), to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant that is immune from such relief. Upon initial review, the Court concludes that the complaint is not subject to dismissal for any of the reasons listed above. In reaching this conclusion, the court has determined that the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Accordingly, the Court discourages the filing of motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

PageID.11. For this reason, the motion should be denied.

Furthermore, defendants Ouellette and Hill's motion to dismiss presents conclusory arguments which do not address the specific allegations in Grayson's complaint or cite authority to support their claim, *i.e.*, that a medical provider's failure to respond to a prisoner's kite is never an Eighth Amendment violation. *See* Defendants' Brief (ECF No. 28, PageID.95).[5]  "It is not

---

[5] Defendants Ouellette and Hill's argument (PageID.95) is as follows:

10

sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, defendants Ouellette and Hill's motion to dismiss should be denied.

### IV.    Recommendation

For these reasons, I respectfully recommend that defendants' motions for summary judgment on the basis of exhaustion (ECF Nos. 25 and 28) be **GRANTED**, that defendants Ouellette and Hill's motion to dismiss (ECF No. 28) be **DENIED**, and that this lawsuit be **terminated**.


Dated:  May 28, 2024                              /s/ Ray Kent
                                                  RAY KENT
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

"The fact Plaintiff wrote kites directed at NP Hill and PA Ouellette and they did not respond to them is not enough to show they were deliberately indifferent to his serious medical needs.  There are no factual allegations supporting a conclusion that NP Hill or PA Ouellette were aware of Plaintiff's rash, and purposely refused to treat Plaintiff.  In fact, there are barely any factual allegations about NP Hill or PA Ouellette at all aside from them not responding to kites, which is not a function performed by medical providers."